GEORGE F. CHOATE, Judge of Probate, *vs.* SAMUEL W. AR-
RINGTON & another.

Essex. Nov. 5, 1874. — Jan. 9, 1875. AMES & DEVENS, JJ., absent.

Where an·executor and the surety upon his probate bond are defaulted in an action
against them for a breach of the conditions of the bond, judgment for the amount
of the penalty of the bond should be entered before the case is sent to an assessor,
but if this is not done, judgment *nunc pro tunc* may subsequently be entered.

Under the Gen. Sts. *c.* 101, § 28, *cl.* 3, execution is to be awarded upon breach of
the conditions of an executor's bond, for the full value of all the estate of the
testator that has come to the hands of the executor, and for all damages oc-
casioned by his neglect or maladministration.

A surety upon an executor's bond is liable for any default on the part of the executor
in not accounting for assets received before as well as after the execution of the
bond.

In an action against an executor and the surety upon his bond, for breach of the
conditions of the bond in not duly rendering an account, an inventory and account
filed by the executor, and also evidence of the receipt by him of money and prop-
erty of the estate, prior to the giving of the bond in suit, are admissible for the
purpose of showing the amount for which the executor ought to account, and of
fixing the amount of the surety's liability.

In an action to enforce an executor's bond for breach of its conditions in not duly
rendering an account, the burden is on the executor and his surety upon the bond
to account for whatever property has come to the hands of the executor; but the
burden is on the plaintiff to prove the damages sustained by a failure to account or
other maladministration.

An executor gave a bond with two sureties conditioned that he should administer
according to law the estate of the testator, and render an account. One of the
sureties was afterwards discharged by order of the Probate Court, and a new
bond was given with a new surety. Before the execution of the latter bond, prop-
erty belonging to the testator's estate came to the hands of the executor for which
he failed to account, and a suit at law was brought upon the second bond for this
breach of its conditions. *Held,* that under the Gen. Sts. *c.* 101, § 28, *cl.* 3, 4, the
surety upon the second bond was liable for the full value of the estate not ac-
counted for, and that whatever adjustment, if any, should be made between him
and the sureties upon the first bond, could be determined only by a suit in equity.

Where, before a trustee appointed under a will to hold and manage the residue of
the devised estate has entered upon the performance of the trust, the executor
collects the rents of the real estate and credits them to the estate in his account to
the Probate Court, deducting his expenditures on account of the real estate and
the support of the testator's family, which account is assented to by the parties
interested, and allowed by the court, and the executor afterwards continues to
collect the rents until the trustees assume charge of the estate, the executor is
bound, under the Gen. Sts. *c.* 98, § 8, to account for the income of the real
estate.

Upon an adjudication in this court that an executor and his surety are liable upon
their probate bond by reason of the executor's failure duly to render an account,

the account should be so stated in this court as to show what is included in it, as the basis of future adjustments with the executor and his sureties, and to enable the court to determine how far interest should be charged on the account.

CONTRACT on a bond given by Samuel W. Arrington as principal, and John McCormick as surety, conditioned that said Arrington, who had been appointed executor of the will of James Arrington, should administer the estate of the testator according to law, and render an account. The breach alleged was that the executor had not administered the estate according to law, and had also failed to account. The defendants were defaulted, and the case was sent to an assessor, who made a report in substance as follows:

James Arrington died July 19, 1866, leaving a will and codicil, which were admitted to probate in October, 1866. He devised the residue of his property to trustees in trust to pay so much of the income to his wife as should be sufficient to support her and his minor children. On March 5, 1867, the defendant Arrington gave a bond in the usual form in the sum of $25,000, with John Hurley and James J. Buckley as sureties.

On May 6, 1867, he filed an inventory, by which it appeared that the real estate of the testator was appraised at $18,100, and the personal estate at $38,095.87. Arrington, immediately upon filing his bond, began to collect the rents of the real estate, claiming them and giving receipts therefor as executor, and to collect the dividends and interest upon the stocks and other personal securities belonging to the estate, and continued to do so up to and for some time after the appointment of a trustee under the will. On March 3, 1868, the executor filed an account, in which the rents collected from the real estate were credited, and by which it appeared that there was then a balance in the hands of the said executor amounting to $37,326.37. No other account was ever filed by him, although he was required to file a further account by a decree of the judge of the Probate Court made on November 12, 1872.

In November, 1870, John Hurley, one of the sureties upon the bond above referred to, petitioned to be discharged from further liability thereon, and on December 6, 1870, a decree was made by the judge of probate, so discharging him; and thereupon, on December 16, 1870, Arrington filed the bond in suit. No inventory was taken at the time of filing this bond.

Arrington had in his hands, at the time of filing his account, the sum of $37,326.37. Since his appointment he has collected rents from said real estate amounting to $14,573.40, of which $8,147.27 were collected before, and $6,426.13 after, December 16, 1870; 'and from other personal securities he collected as income the sum of $8,628.17 before, and $3,621.50 after, that date. In December, 1872, a trustée was appointed under the will, and after that date Arrington transferred to the trustee stocks and securities amounting at the prices at which they were appraised in said executor's inventory, and in part in said trustees' inventory, to the sum of $23,624.20.

On these facts the assessor found that there was due and payable from said Samuel W. Arrington upon his bond the sum of $33,430.86, being the amount of the balance of his account, with the income of the real and personal estate less the rents and dividends credited in the account, and less the amount at which the personal securities transferred to the said trustee were appraised, and assessed damages against him in that amount. Arrington, though duly notified, was not present at the hearing before the assessor, and offered no evidence.

The plaintiff contended that the executor's inventory filed March 6, 1867, and the account of March 3, 1868, were evidence tending to show the amount of property for which McCormick was liable, and was at least evidence tending to show the amount of property in the executor's hands when McCormick became his surety, but for the purposes of this case the assessor ruled that the testimony was not competent for either purpose.

The plaintiff also contended that the evidence of the receipt of the various sums of money by Arrington after he became executor, as income of the real and personal estate, as above set forth, both before and after McCormick became surety, was admissible as evidence against McCormick to show the amount for which he was liable, but this evidence was also rejected as incompetent for that purpose.

The plaintiff also offered evidence tending to show that certain definite portions of the property which originally came into the possession of Arrington as executor, remained in his possession when and after McCormick became surety, and had not been since accounted for, contending that McCormick was responsible

therefor ; and that the burden of proof was on him to show that such property had been administered according to law, and that he was liable in the absence of any such testimony; but the testimony was rejected, and it was ruled for the purposes of the hearing, that McCormick was not responsible for the application of that property which originally came into the possession of the executor before he became surety, although it was still in his hands at and after that time, but only for such new property as came into said Arrington's possession after he became surety; and that the burden of proof was upon the plaintiff to show that he had suffered damage, and that the burden was not sustained by showing that property for which McCormick was responsible came into the possession of the executor and had not since been delivered to said trustee upon his demand ; but that it was incumbent upon the plaintiff to show by further evidence that such property had not been administered according to law and the provisions of the testator's will. The assessor found against McCormick in nominal damages, and the plaintiff excepted to all the above rulings.

At the trial in this court, *Colt,* J., reserved the case for the consideration of the full court upon the pleadings and the assessor's report. " If the rulings of the assessor were correct, judgment is to be entered upon the report ; if otherwise, the case is to be recommitted to the assessor for further hearing of the parties."

*S. B. Ives, Jr. & R. C. Lincoln,* for the defendants, were first called upon.

*J. A. Gillis,* for the plaintiff.

WELLS, J. The case shows a breach of the conditions of the bond in not rendering an account when required by the Probate Court. The defendants were defaulted and judgment for the amount of the penalty of the bond should have been entered before reference to the assessor. It may be entered *nunc pro tunc.*

For this breach of the bond, execution is to be awarded for the full value of all the estate of the deceased that has come to the hands of the executor, and for which he shall not satisfactorily account, as well as for all damages occasioned by his neglect or maladministration. Gen. Sts. *c.* 101, § 28, *cl.* 3, 4. The separa-

tion of these two clauses would seem to leave the third -- for a breach in not accounting — without any provision as to the amount for which execution is to be awarded. But reference to the original statute of 1786, *c. 55*, makes it clear that the provisions contained in the fourth clause must be intended to apply to the third also. The fourth is an additional clause inserted in the revision of 1836, as indicated by the notes of the commissioners to *c. 70, § 10*, for the purpose of greater precision, and not to change the law as it previously existed.

The purpose of awarding the execution in this mode is to put the whole assets of the estate, not already, disposed of and accounted for in a proper manner, into the control of the judge of the Probate Court, so that he may proceed with its settlement and direct the course of its further administration. He may remove the present administrator, and appoint another to take the proceeds of the execution and complete the administration; and the proceedings upon the bond in this court are sometimes suspended, in order to have that change made before the final award. *Newcomb* v. *Williams*, 9 Met. 525, 539. *Bennett* v. *Russell*, 2 Allen, 537, 541. But we do not regard that course as necessary, because the judge of the Probate Court may doubtless, if he sees fit, or if no application is made for removal of the executor or administrator, permit him to continue and complete the settlement of the estate; in which case the award of execution will determine disputed questions and also the amount for which he is to be held accountable from that time. Gen. Sts. *c.* 101, § 29. If the bonds already given are not sufficient security against future breaches, (see § 30,) new bonds may be required under § 15.

The surety is liable for whatever is properly chargeable to his principal in the official capacity on account of which the bond was given; and whatever is competent as evidence upon which to charge the principal is competent also against the surety. The inventory and the former account filed by the executor in this case were competent to show for what the executor ought to render an account, and therefore for what he and his surety were liable upon the bond. So too, evidence of the receipt of various sums of money as income of personal estate, and of any and all property which at any time had come or ought to have come into

his hands, was competent both against him and his surety. It was not necessary to show that it was in his hands when McCormick became surety, or at any time afterwards. If he has never properly disposed of and accounted for it, he is bound to account for it now ; and the sureties upon his bond, whenever given, are held for his faithful performance of that duty. *Dawes* v. *Edes,* 13 Mass. 177. *Winship* v. *Bass,* 12 Mass. 198. *Sigourney* v. *Wetherell,* 6 Met. 553, 558. *Mattoon* v. *Cowing,* 13 Gray, 387, 390. *Chenery* v. *Davis,* 16 Gray, 89. *Leland* v. *Felton,* 1 Allen, 531. *Alvord* v. *Marsh,* 12 Allen, 603. *Chapin* v. *Waters,* 110 Mass. 195.

The property being shown to have belonged to the estate, or to have come to the hands of the executor at any time, the burden is then upon him, and thus upon the defendants in this suit, to account for it. If it is sought to recover damages occasioned by the neglect of the executor to account at the proper time, or by other maladministration, the burden of proving such damages would be upon the plaintiff.

So far as the award of execution is for the value of estate not accounted for, there can be no separation of that estate or apportionment of damages. The statute requires the award to be " for the full value of all the estate " so unaccounted for. It gives this as the rule and measure, and there is no other. The result cannot be modified, therefore, by the fact of the previous bond ; even if the other surety in that bond can be held bound after the discharge of his co-surety; or if there had been, before his discharge, such a breach of that bond as to render both of those sureties liable to be still held, under the Gen. Sts. *c.* 101, § 18, for damages on account of a part of the same assets to which this suit applies. Whatever contribution there ought to be between the sureties upon the several bonds must be sought, and the adjustments therefor can only be made, in a suit in equity.

The trustees appointed to hold and manage the residue of the estate, not having qualified themselves to act, the executor proceeded to collect the income, including rents of real estate. These he returned in his first account, credited to the estate, charging also for his expenditures on account of the real estate and on account of the maintenance of the widow and minor children, for whose use, in the first instance, it was so devised. The parties

interested assented to the account thus rendered, the widow "for herself and minor children;" and it was allowed by the Probate Court. The executor thereafter continued to collect the rents until the trustees were ready to assume the charge of the trust estate. These facts make a case for requiring the executor to account for the income of real estate under the Gen. Sts. c. 98, § 8. *Stearns* v. *Stearns*, 1 Pick. 157. *Palmer* v. *Palmer*, 13 Gray, 326, 328. *Almy* v. *Crapo*, 100 Mass. 218.

It follows that the surety must be held responsible for the whole amount for which his principal ought to account. If the executor has not been, and is not to be removed, he will probably render such an account in the Probate Court as will obviate the necessity of the ultimate award and issue of execution. If not, the account should be so stated in this court as to answer the purpose of an executor's account, so far as to show what is included in it, as the basis of future adjustments with the executor and his sureties, and also to enable the court to determine how far interest should be charged upon the balance or any part of the account. For the purpose of a more formal statement of the account, and a restatement of the results, in accordance with this opinion, the case is                    *Recommitted to the assessor.*