JOHN W. McKIM, Judge of Probate, *vs.* WILLIAM S. BART-
LETT & others.

Suffolk.   March 11. — Aug. 31, 1880.   ENDICOTT & SOULE, JJ., absent.

If the estate of a deceased person is represented insolvent, and commissioners are appointed by the Probate Court to adjudicate upon the claims of creditors against the estate, and no appeal is taken from the decision of the commissioners upon the claims presented, the neglect of the administrator of the estate to render his account within six months after the return of the commissioners, if no further time is allowed him by the court, is a breach of his administration bond, under the Gen. Sts. c. 99, § 26; the return of the commissioners, without any appeal, is " the final liquidation of the demands of the creditors," within the meaning of the statute; and the fact that a creditor presents a contingent claim against the estate, upon which no action is taken, is immaterial.

If the sureties upon an administration bond are discharged by the Probate Court, and a new bond is given to and accepted by the court, with other sureties, and there is a breach of the bond before such discharge, caused by the failure of the administrator to render his account within the time required by law, the original sureties are not liable for the full value of the property in the hands of the administrator, if he has not misappropriated it before their discharge, but only for nominal damages, or such damages as are caused by his delay in filing an account; and if such property is lying idle and unproductive, there being no misappropriation, interest during the period of the administrator's delay to file his account is the measure of damages.

CONTRACT upon a bond signed by the defendant Bartlett as principal, and the other defendants as sureties, and conditioned for the faithful performance by Bartlett of his duties as administrator of the estate of Hillman B. Barnes. The case was

submitted to the judgment of this court upon an agreed statement of facts, in substance as follows :

On September 14, 1874, administration of the estate of Barnes was granted to the defendant Bartlett, who accepted the trust and gave the bond in suit. On December 22, 1874, Bartlett made and returned into court an inventory of the estate; the real estate being appraised therein at $86,700, and the personal estate at $31,364.25. On September 10, 1875, he filed his first account as administrator, which was allowed by the court on September 27, 1875; and which stated a balance of $5437.57 of the personal estate to remain in his hands as administrator. On February 28, 1876, he filed a representation that the estate was insolvent. The Probate Court thereupon appointed two commissioners to receive and examine all claims of creditors against the estate, and to return into court a list of all claims laid before them, with the sum allowed on each.

On May 18, 1876, Bartlett, as administrator, sold all the real estate of the deceased, by virtue of a license granted to him by the court, and received therefor the sum of $17,500. On September 1, 1876, John G. White filed in the Probate Court a petition alleging that he had a contingent claim against the estate, not determinable until October 1, 1877, and praying that the assets of the estate might be reserved to secure the same; upon which petition no hearing has ever been had or any decree or order made. The commissioners received and examined all claims presented to them, and, on November 3, 1876, returned into court a list of all such claims with the sum allowed on each claim, the aggregate amount allowed being $98,013.37. White filed with the commissioners a petition similar to that filed by him in the Probate Court, which petition the commissioners filed in court with their report and certified that the same was filed without action. No appeal was taken from the decision of the commissioners allowing or disallowing any claim presented. Bartlett did not render and settle any account of his administration in court, within six months after the return of the commissioners; and no further time was allowed him by the court within which to render his account.

On March 27, 1877, the defendant sureties filed in the Probate Court a petition, praying to be discharged from all further

responsibility on said bond, which petition, after due notice to all persons interested, was granted on May 14, 1877, and Bartlett was ordered to file a new bond, with sureties, which he did on May 28, 1877, and the same was approved.

On September 14, 1877, Bartlett was cited by the Probate Court to render an account of his administration of said estate, which he refused and neglected to do; and he has never rendered any such account, other than the account previously mentioned.

The Probate Court has never made any decree for the distribution of the effects of said estate among the creditors thereof, and, on April 29, 1878, authorized Benjamin Barnes, a creditor of the estate, whose claim was allowed by the commissioners, to bring this action, which was commenced on August 23, 1878.

Bartlett, on his own request, was allowed by the Probate Court to resign his trust, on July 8, 1878, and died after the bringing of this action.

If, upon these facts, the plaintiff could not maintain his action, judgment was to be entered for the defendants. If the plaintiff was entitled to nominal damages, judgment was to be entered accordingly. If the plaintiff was entitled to recover interest on the amount in the administrator's hands, from May 3 to May 28, 1877, judgment was to be entered for the plaintiff, and execution issue for such interest computed on $22,937.57, with interest thereon to the date of the writ, and costs. If the plaintiff was entitled to recover other and substantial damages, the case was to be sent to an assessor to determine the sum for which execution should issue.

*H. W. Paine & E. T. Luce*, for the plaintiff.

*O. W. Holmes, Jr. & W. A. Munroe*, for the sureties.

MORTON, J. Upon the facts agreed in this case, there was a breach of the condition of the bond in suit, for which the plaintiff is entitled to recover at least nominal damages. In the case of an insolvent estate, the statute provides that, " if an executor or administrator neglects to render and settle his accounts in the Probate Court within six months after the return made by the commissioners or the final liquidation of the demands of the creditors, or within such further time as the court shall allow, and

thereby delays a decree of distribution, such neglect shall be deemed unfaithful administration; and he may be forthwith removed, and shall be liable in a suit on his bond for all damages occasioned by his default." Gen. Sts. *c.* 99, § 26. In this case, the return of the commissioners was made on November 3, 1876. There was no appeal from the decision of the commissioners allowing or disallowing the claims of the creditors, and the neglect of the administrator to render an account on or before May 3, 1877, was maladministration and a breach of his bond. The clause in the statute, "or the final liquidation of the demands of the creditors," was intended to apply to cases where there is an appeal from the decision of the commissioners, and where therefore the amounts due to creditors among whom a dividend is to be made cannot be ascertained until such appeals are determined. It was not intended to postpone the duty of the executor or administrator to render his account until contingent claims were finally determined. The return of the commissioners, without any appeal, was "the final liquidation of the demands of the creditors," within the meaning of the statute; and the fact that one White had presented a contingent claim is not material.

The remaining question is as to the amount of the damages the plaintiff is entitled to recover. It is admitted that, on May 28, 1877, the defendants, who signed the bond as sureties, were, by a decree of the Probate Court, discharged from further liability upon the bond in suit, a new bond with other sureties having then been given by the administrator and approved by the court. They thereupon ceased to be liable for any future acts of maladministration of the principal, but they remained liable for all breaches of the condition committed before the new bond was approved. Gen. Sts. *c.* 101, § 18. The plaintiff contends that they are liable for the full value of the property in the hands of the administrator. His argument is that, at any moment after his default, a suit might have been brought on the bond in which the measure of damages would be, under the Gen. Sts. *c.* 101, § 28, *cl.* 4, the value of the property; that this liability existed against the defendants after May 3, and they were not relieved from it by their subsequent discharge from responsibility on the bond. The measure of damages established by that

statute for a breach of the bond in not accounting is "the full value of all the estate of the deceased that has come to the hands of the executor, and for which he shall not satisfactorily account." *Choate* v. *Arrington*, 116 Mass. 552.

But if such suit had been brought against the defendants, we do not think that the measure of damages would necessarily have been the value of the property. If it appeared that there had been in fact no defalcation or misappropriation of the property by the administrator, but his only default was a delay in filing his account, he could, by filing his account and putting the property in his hands at the disposition of the judge of probate, exempt his sureties from any liability except for nominal damages, or for such damages, if any, as were caused by his delay in filing an account. This would seem to be clear if a suit had in fact been brought against the defendants while they remained liable as sureties, and they had caused the administrator to file his account. Do the facts, that a suit was not brought, and that the administrator did not file any account, extend their liability so as to make them responsible for the full value of the property? It is unjust that the sureties on the first bond should be held liable for misappropriations of the property by the administrator after they have been duly discharged. For such misappropriations the sureties on the second bond are liable. In such case the real damage to the estate is caused by maladministration after the first sureties are discharged, and is not the consequence of the breach for which they are responsible, viz. the delay to file an account. They ought not to be held responsible for a loss to the estate caused by subsequent maladministration, and not by the delay in accounting.

The plaintiff relies upon the case of *Choate* v. *Arrington*, *ubi supra*. In that case, there were two bonds, on one of which a surety had been discharged, but the suit was against the sureties on the second bond; and it was held that they were liable for all the estate which the executor ought to account for, whether received by him before or after the new bond was given; but it does not touch the question as to the liability of the surety who had been discharged.

In the case at bar, it does not appear that there had been any misappropriation by the administrator before the discharge of the

sureties. We are not quite clear whether we can take it as a fact agreed, that there had not been any such misappropriation, as the statement of facts is in this respect ambiguous. If there had not been any, we are of opinion that the defendants are not liable for the full value of the estate, but only for such damages as were occasioned by the delay in rendering an account. If there had been a previous misappropriation, this was maladministration for which the defendants would be liable under their bond. Unless the parties agree upon this matter, the case must be referred to an assessor.

If the defendants are not liable for any portion of the property received by the administrator, the further question whether they are liable for any other than nominal damages cannot be decided, because the statement of facts does not furnish us with the means of deciding it. If the money in the hands of the administrator was lying idle and unproductive, interest thereon would be a fair measure of the damages ; but if the money was invested, earning income or interest, this income or interest would enure to the benefit of the creditors, and the plaintiff would not be entitled to any except nominal damages. This matter can be determined by the assessor. *Case to go to an assessor*