BEARD *et al.* *v.* ROTH.

(*Circuit Court E. D. Arkansas.* June 11, 1888.)

1. EXECUTORS AND ADMINISTRATORS—SETTLEMENT AND ACCOUNTING—JUDGMENT —AFTER DEATH OF DEFENDANT—COLLATERAL ATTACK.

Where the accounts of an administrator are settled and filed in the proper court, in his life-time, showing a balance due the estate, the court thereby acquires personal jurisdiction, and a judgment rendered after his death. confirming the report and directing payment of the sum in his hands, is not void when attacked collaterally in a suit against the surety on the administrator's bond, though the judgment might have been reversed on appeal.

2. SAME—BOND—ACTION AGAINST SURETY—JUDGMENT—RES ADJUDICATA.

Only creditors and distributees can maintain an action against the sureties of a former administrator for money or property of the estate lost, wasted, or converted by him; so in such an action the surety cannot plead in bar a former suit and recovery against him for the same cause of action by the administrator *de bonis non*, who sued without plaintiffs' consent, and did not account to them for the money recovered.

3. SAME—LIABILITY OF SURETY—PRESUMPTION.

Where the surety on an administrator's bond is discharged, and a new bond given, the surety is not liable for moneys found due the estate on a settlement of the administrator's accounts made thereafter, where it is not shown

that the breach occurred before the discharge; and such breach will not be presumed upon proof that the administrator received funds before the discharge, where it also appears that he afterwards paid out a much larger sum.

At Law. Action on an administrator's bond against the surety as surviving obligor.

*J. M. & J. G. Taylor* and *W. S. McCain*, for plaintiffs.

*W. H. Harrison* and *Cohn & Cohn*, for defendant.

CALDWELL, J. On the 9th day of February, 1875, J. F. Vaughn executed his bond for the administration of the estate of S. W. McCreary. with John Roth, the defendant, as one of his sureties. On the 11th of October, 1876, Roth made application to the probate court to be released as such surety, and the court made an order requiring Vaughn to give a new bond, and on the 30th of October, 1876, Vaughn gave a new bond to the approval of the court, and Roth was discharged. At the July term, 1877, of the probate court, Vaughn filed his first settlement as administrator. Exceptions were filed to this settlement, and thereupon the administrator filed a new settlement, which was also excepted to, and referred by the court to a master, who filed his report thereon May 8, 1878. The master's report fixed the balance in the hands of the administrator at the date of filing the settlement at $2,266.25. Vaughn died in December, 1879. On the 23d day of April, 1880, the master's report was confirmed by the court. In July, 1886, J. M. Taylor was appointed administrator of Vaughn's estate, and ordered to pay to the plaintiffs, as creditors of McCreary's estate, the sum of $2,266.25 adjudged to be in Vaughn's hands as administrator of McCreary's estate. Taylor did not pay, and thereupon this suit was brought against the defendant on Vaughn's first bond as administrator. The breaches assigned are that Vaughn converted to his own use the $2,266.25, and that his administrator refused to pay that sum to the plaintiffs, as he was required to do by the order of the probate court.

Numerous defenses are set up; among them, that the judgment of the county court fixing the amount due from Vaughn on his settlement was rendered after his death; but the judgment is not void for that reason. The court had exclusive original jurisdiction of the subject-matter, and had acquired jurisdiction of Vaughn's person in his life-time. It is probable that the judgment of the county court, rendered after his death, might have been reversed on appeal; but it is not void, and is not open to collateral attack. *Yaple* v. *Titus,* 41 Pa. St. 202; *Reid* v. *Holmes,* 127 Mass. 326; *Hayes* v. *Shaw,* 20 Minn. 405, (Gil. 355.)

The administrator *de bonis non* of McCreary's estate sued the defendant, as surety of Vaughn, for the same cause of action set up in the complaint in this case, and recovered a judgment against the defendant, which he satisfied; and the defendant pleads this as a former recovery in bar of this suit. But it is the settled law in this state that an administrator *de bonis non* has no right to sue the representatives or sureties of a former administrator for money or property of his intestate lost, wasted, or converted by him; and that only creditors and legatees or distributees

can maintain such action.    *Oliver* v. *Rottaken*, 34 Ark. 144; *Finn* v. *Hempstead*, 24 Ark. 117; *Williams* v. *Cubbage*, 36 Ark. 307.    If the suit of the administrator *de bonis non* had been brought by the advice and direction of the plaintiffs, or if the plaintiffs had received the fruits of that suit, they would be estopped; but they are not bound by a recovery by one who had no interest in the fund, and no right to sue for it, and who proceeded without their knowledge and consent, and did not account to them for the money wrongfully recovered by him.

As a further defense the defendant relies on his discharge as surety. The complaint does not allege a breach of the bond prior to the defendant's discharge, and by the strict rule of pleading this would be fatal to the plaintiff's case on any state of the proofs.    But if the plaintiffs had proved a good case, the court would direct that the complaint be amended to correspond with the proof.    The evidence, however, falls short of establishing a cause of action in the very respect the complaint does in stating one.    Up to the time the defendant was discharged as surety, Vaughn is not shown to have misappropriated any of the assets of the estate.    His first settlement was not filed until July, 1877, nearly a year after the defendant's discharge; and this settlement was not finally adjusted by the court until 1880; and the order to pay over to the creditors, which was essential to render Vaughn and his sureties liable to the suit of the creditors, (*George* v. *Elms*, 46 Ark. 260; *State* v. *Roth*, 47 Ark. 222, 1 S. W. Rep. 98,) was not made until 1886,—ten years after the defendant's discharge, and six years after Vaughn's death.    It is proved that at the date of the defendant's discharge Vaughn had money of the estate in his hands to the amount of $612.75; but there is no evidence that he had at that time converted this money to his own use.    On the contrary, the proof shows that after that date he paid out on debts of the estate, and for expenses of administration, largely more than this amount; and by analogy to the rule for the application of payments these disbursements must be held to have been made out of funds longest in his hands, or, what is the same thing, must be applied to the payment of the earliest items of debit against him.    No fact is shown to vary this general rule in its application to this case.    It is well settled that it will be presumed that the administrator performed his duty until the contrary is proved; and to render a discharged security liable it must be alleged and proved that before his discharge the administrator had misappropriated the assets of the estate.    In the absence of such proof the sureties in the new bond are alone liable.    *Phillips* v. *Brazeal*, 14 Ala. 746; *McKim* v. *Bartlett*, 129 Mass. 226; *State* v. *Stroop*, 22 Ark. 328. The statute declares the discharged surety "shall only be liable for such misconduct as happened prior to giving the new bond."    Simply having in his possession money or other assets at the time of giving the new bond is not "misconduct."    The object of the new bond is to secure the assets of the estate theretofore received by the administrator, as well as all that shall thereafter come into his hands; and such is its condition. Sureties on official bonds are only liable for defaults committed after the commencement of the term of office for which they became responsible;

but that rule has no application to this case.  There are no terms in the office of an administrator; it is a continuous employment from the commencement until the close of the administration.  When he gives a new bond there is no new commitment of the estate to his hands, nor is there any settlement of, or rest made, in his accounts.  There is no occasion for such action, because the new bond covers the whole liability of the administrator to the estate, whether incurred before or after its execution.  *Scofield* v. *Churchill*, 72 N. Y. 565; *Morris* v. *Morris*, 9 Heisk. 814; *Choate* v. *Arrington*, 116 Mass. 552; *Pinkstaff* v. *State*, 59 Ill. 148.  In *Morris* v. *Morris*, *supra*, it is held that the sureties in the new bond are primarily liable for the whole amount for which the administrator ought to account.  This doctrine would imply that the last bond should be exhausted before resort could be had to the first for any defalcation that occurred before the sureties on it were discharged.  But see *State* v. *Berning*, 74 Mo. 87; *Pinkstaff* v. *State*, 59 Ill. 148; *Choate* v. *Arrington*, 116 Mass. 552.  However this may be, it is certain the discharged sureties are not liable except "for such misconduct as happened prior to giving the new bond," and no such misconduct is shown in this case.