JOSEPH W. FOSTER *vs.* AMASA W. BAILEY.

Suffolk.    January 26, 1892. — September 22, 1892.

Present: FIELD, C. J., ALLEN, HOLMES, KNOWLTON, MORTON, LATHROP, & BARKER, JJ.

*Administrator and Administrator de Bonis non — Accounts — Insufficient Allegation — Waiver.*

An administrator has the right to file and settle the account of his intestate as administrator *de bonis non* of an estate in the Probate Court before he can be called upon to deliver all of the assets in his hands belonging to the estate. FIELD, C. J., KNOWLTON & BARKER, JJ., dissenting as to goods and chattels of the first intestate which remain in specie unadministered and unappropriated.

Where, on a bill in equity by an administrator *de bonis non* to compel the administrator of the administrator *de bonis non's* predecessor to deliver the personal property of the first estate to the plaintiff, it appeared that the plaintiff had been appointed administrator *de bonis non* since the filing of the bill, the court treated the case, no objection being made, as if the plaintiff's appointment had been made before the commencement of the suit.

The question whether an administrator should receive compensation for filing and settling the account of his intestate as administrator *de bonis non* of an estate in the Probate Court, if his intestate has been guilty of maladministration, is a matter for that court to pass on in the first instance.

LATHROP, J.    This is a bill in equity, filed on December 12, 1890. The plaintiff is the administrator *de bonis non* of the estate of Sarah K. Larkin, having been appointed on October 31, 1890.

Israel J. Larkin, the husband of Sarah, died in 1878, leaving a will which appointed Sarah his executrix, and made her his sole legatee. His estate consisted of certain shares of stock in two railroad corporations. Sarah died in 1887, having filed no inventory or account of the estate of Israel.

In 1888, George O. Frothingham was appointed administrator *de bonis non* with the will annexed of the estate of Israel, and filed an inventory showing the said shares of stock as the assets of the estate. In the same year Frothingham was also appointed administrator *de bonis non* of the estate of Sarah, and filed an inventory which showed said shares of stock and other property as the assets of her estate.

In 1889, Frothingham filed his account of the estate of Sarah in the Probate Court, showing a balance in his hands. This account has not been called to the attention of that court, and is still pending.

In October, 1890, Frothingham died, and the defendant was duly appointed administrator of his estate, without a surety on his bond. At the time of his death, Frothingham had in his possession, and the defendant now has, the shares of stock set forth in the inventory of the estate of Israel, and also certain of the property set forth in the inventory of the estate of Sarah.

Since the bill was filed, the plaintiff has been appointed administrator *de bonis non* with the will annexed of the estate of Israel; but the bill has not been amended. No objection has, however, been made on this ground.

Since the filing of the bill, the defendant, as administrator of the estate of Frothingham, has filed in the Probate Court an account of the administration of Frothingham as administrator of the estate of Israel, and also an account of the administration of Frothingham as administrator of the estate of Sarah, in substitution of the account filed by Frothingham. Each of these accounts shows a balance in the hands of the accountant.

The plaintiff contends that he is at once entitled to the securities in the possession of the defendant. The defendant contends that the accounts above referred to should first be settled in the Probate Court, and the balance remaining due after such settlement, and the payment of his reasonable expenses in proving the account, should alone be ordered to be paid over.

A decree was entered by a single justice of this court, directing the defendant to deliver to the plaintiff all the property, except one share of stock in a railroad corporation and a depositbook in a savings bank, which the defendant was allowed to retain as security for any sums which might be found due to the estate of Frothingham, or to the defendant, from the estate of either of the Larkins, upon the account rendered by Frothingham or his administrator to the Probate Court, and for such sums, if any, as might be allowed by the Probate Court for the expenses properly incurred in settling such accounts. From this decree the plaintiff alone has appealed.

The plaintiff relies upon the Pub. Sts. c. 129, § 10, which provide that " The executor of an executor shall not, as such,' administer on the estate of the first testator." At common law an executor of an executor was, *ipso facto*, the executor of the first testator. This rule was changed in this Commonwealth by the St. of 1783, c. 24, § 19, which provided that " The executor of an executor shall not in consequence thereof become an executor of the first testator." In the various revisions of the statutes the language has been slightly changed, until in the Public Statutes it reads as above set forth. Rev. Sts. c. 63, § 10. Gen. Sts. c. 93, § 9. Pub. Sts. c. 129, § 10. See also *Waters* v. *Stickney*, 12 Allen, 1, 9. This statute has, however, nothing to do with the question before us, because at common law the administrator of an executor was not, as such, the executor of the first testator. Wms. Ex. (6th Am. ed.) 254. 2 Bl. Com. 506. And this is undoubtedly the rule to-day. But this is not decisive of the question before us. The defendant, as administrator of the estate of Frothingham, does not seek to administer upon the estate of either of the Larkins; his principal object is merely to perform a duty in regard to their estates which was incumbent upon his intestate to perform. He also seeks to realize for his estate sums of money which at the death of his intestate were due from the estates of the Larkins.

The plaintiff's contention is, that, although an executor or administrator has a claim upon the assets of the estate for his disbursements and compensation, yet at his death the representative of his estate must at once turn over all assets of the first estate to the administrator *de bonis non* of that estate, and

seek his remedy where he can find it; and that such representative has nothing further to do with any account of his intestate in the Probate Court. But we are of opinion that this is not the law.

In *Ritchie* v. *Rees*, 1 Add. Eccl. 144, 148, it was held by Sir John Nicholl, in the Prerogative Court of Canterbury, that the representatives of a deceased administrator, although not those of the first testator, were liable to be called upon for an inventory, and to account for the effects of the original testator. In *Steen* v. *Steen*, 25 Miss. 513, 534, it was held to be the duty of the administrator of an administrator to settle his intestate's account as administrator. In *Jarnagin* v. *Frank*, 59 Miss. 393, the same rule was applied to the administrator of an executor. In *Ray* v. *Doughty*, 4 Blackf. 115, it was held that, although the administrator of an administrator is not an administrator of the first intestate, and has no right to administer any of the goods of such intestate, yet it is his duty to make a settlement with the Probate Court of the business done by his intestate in the first administration.

It is suggested that specific chattels on the decease of an executor or administrator pass to the administrator *de bonis non* of the original estate, while money, including the proceeds of goods converted into money, does not; and that therefore the plaintiff is entitled at once to the possession of everything except money. In the first place, we do not think that any such distinction exists in this Commonwealth. An executor or administrator holds all the property of the estate as a trustee, and he is as much bound to keep the money distinct as he is any chattel. See *Brown* v. *Pendergast*, 7 Allen, 427; *Collins* v. *Collins*, 140 Mass. 502; *Marvel* v. *Babbitt*, 143 Mass. 226, and cases cited; *Mechanics' Savings Bank* v. *Waite*, 150 Mass. 234.

In the next place, although on the death of Frothingham and the appointment of the plaintiff the title to all the property of the two Larkin estates which had been in his possession vested in the plaintiff, yet he took the title subject to all liens or rights of retainer. In the case of *In re Watson*, 53 L. J. Ch. 305, and 50 L. T. (N. S.) 205, it was held that where a solicitor has acted professionally for a testator, and for his executor, and papers belonging to the estate have come into his possession, and after

the death of the executor an administrator *de bonis non* of the original estate is appointed such administrator, he is not entitled to reclaim from the solicitor the papers in his possession without paying the costs due him, not only in respect of work done for the testator, but also in respect of work done for the executor. This case proceeds upon the ground that the liabilities of the estate pass, with the benefits of it, to the administrator *de bonis non.*

The right, at common law, of an executor or administrator to retain out of the assets of the estate the amount of a debt due him from the testator, is well settled. See Wms. Ex. (6th Am. ed.) [1039–1050]; *Woodward* v. *Darcy*, Plowd. 184. This right is not interfered with by our statutes, but the manner in which the amount of the debt is to be determined is provided for by the Pub. Sts. c. 136, §§ 6, 7, when any one interested in the estate disputes the claim. The right of retainer is not, however, confined to a debt due from the testator. Thus, in *Livingston* v. *Newkirk*, 3 Johns. Ch. 312, 318, it was said by Chancellor Kent: "The rule is well established, that if an executor or administrator pays, out of his own moneys, debts to the value of the assets in hand, he may apply the assets to his own use, towards satisfaction of the moneys he has expended."

This doctrine is a very old one. In *Anon.*, Dyer, 2*a*, an action of debt was brought against executors, to which they pleaded *plene administraverunt*. At the trial the plaintiff showed that certain plate and other household stuff were in the defendants' hands. The executors offered evidence to show that the plate had been pledged by the testator for its full value, and had been redeemed by them for its full value, out of their own money, because the goods of the testator were not sufficient for this purpose. As to the household stuff, they offered evidence to show that they had paid out of their own money for debts of the testator as much as or more than the value of the stuff. To this evidence the plaintiff demurred, and by consent the jury was discharged. "And by all the court [the Exchequer Chamber] it was holden, that the evidence for the executors was good, for the executor may well pay the debts of his testator out of his own money, and retain so much of the effects of his testator in his hands to his own use as

amounts to the value of his money." See also *Elliott* v. *Kemp*, 7 M. & W. 306, 313, per Parke, B.

In *Chalmer* v. *Bradley*, 1 Jac. & W. 51, 64, the doctrine is recognized that, if an executor pays to creditors more than the value of his testator's personal assets, he acquires an absolute right to them.

In the case of *In re Compton*, 30 Ch. D. 15, the line was sharply drawn between assets which had come into the possession of the executor or under his control, and those to which he had merely a right of action. As to the former, it was held that he had a right of retainer; and that this right could be exercised by his executors.

The case of *Slaymaker* v. *Farmers' National Bank*, 103 Penn. St. 616, arose under the Penn. St. of Feb. 24, 1834, c. 408, § 31, which gives administrators *de bonis non* "power to demand and recover from their predecessors in the administration, or their legal representatives, all moneys, goods, and assets remaining in their hands, due and belonging to the estate of the decedent. . . . Provided that when any suits shall have been brought by an administrator *de bonis non* for the recovery of moneys, goods, or assets remaining in the hands of his predecessors, or their legal representatives, before they shall have settled their final administration account, the court . . . shall have power to stay the proceedings therein, on the defendants filing such account in the register's office in the proper county" within a certain time. In an action by an executor of an administrator, who had died before the settlement of his account as administrator, against a bank to recover a deposit made therein by the administrator in his representative capacity, it was held that it was no defence that the bank had paid the deposit to the administrator *de bonis non* of the original intestate. It was urged by the defendant that the administrator *de bonis non* had the right to the money, it having been deposited by the administrator in his representative capacity, and not as an individual; but the court held that the plaintiff was entitled to recover; and the justice who delivered the opinion of the court said: "What could more properly be embraced in the account than moneys received, disbursements, expenses, and compensation for services? Because it appears that the deceased

executor or administrator did not embezzle the trust money, or mix it with his own, shall the whole be taken by his successor without deduction for just charges? The law does not so intend." See also *Bowman's appeal*, 62 Penn. St. 166.

In *Munroe* v. *Holmes*, 9 Allen, 244, the administrator of the estate of one Barstow, who in his lifetime was the executor of the will of one Dexter, and died without settling his account, brought an action of contract against the administrator *de bonis non* of the estate of Dexter, to recover the balance of an account shown to be due the estate of Barstow as executor, the plaintiff having been allowed to file and settle such account in the Probate Court. The court held that the action could not be maintained; but Mr. Justice Chapman, in delivering the opinion of the court, said: " The plaintiff properly settled the account of his intestate in the Probate Court, and if he has any further remedy we think he must seek it in that court, under Gen. Sts. c. 101, § 22." This statute authorizes a suit on the bond.

In *Munroe* v. *Holmes*, 13 Allen, 109, the case came before this court on an appeal from a decree of the judge of probate upon the petition of the administrator of the estate of Barstow, who was in his lifetime the executor of the will of Dexter, against the administrator *de bonis non* with the will annexed of the estate of Dexter, seeking to obtain payment of the balance of the executor's account from the proceeds of real estate sold by the administrator *de bonis non* under a license from the Probate Court. The petition was dismissed, on the ground that it did not appear that the administrator *de bonis non* had settled his account, nor how much of the sum in his hands might be needed to defray his own charges of administration, which were entitled to a preference. Mr. Justice Hoar, in delivering the opinion of the court, said: " The executor's account has been settled in the Probate Court by the petitioner, his administrator, and a balance is found due to him from the estate, consisting of debts which he had paid and charges of administration. If there had been any personal estate in his hands at the time of his decease, his administrator would of course have been allowed to retain it in satisfaction of his claim." Although this remark was *obiter*, we see no reason to doubt its correctness. It was concurred in by Chief Justice Bigelow, Mr. Justice Chapman,

afterwards Chief Justice of this court, and by Mr. Justice Wells, whose learning in probate law was very great.

In *Ammidown* v. *Kinsey*, 144 Mass. 587, a bill in equity was brought by the administrator *de bonis non* with the will annexed of the estate of one Ammidown against the former executor of the will of the testator, alleging that the defendant, as executor, sold real estate under a power in the will, misappropriated the proceeds, and refused to account for them. It was held that this court had no jurisdiction of the bill, on the ground that it was the duty of the executor to settle his account in the Probate Court.

It is also well settled that an executor who has resigned his trust, or who has been removed, cannot maintain an action at law or a suit in equity, against the administrator *de bonis non* of the estate, before he has settled his account in the Probate Court. *Prentice* v. *Dehon*, 10 Allen, 353. *Newell* v. *West*, 149 Mass. 520, 529.

In *Browne* v. *Doolittle*, 151 Mass. 595, an administrator improvidently paid over to the next of kin all of the assets of the estate, and had his account allowed. Subsequently, on the application of a creditor, the administrator was removed from office for failing to give an additional bond, his account was reopened, and he was ordered to pay to an administrator *de bonis non*. On appeal, although it was said by this court that "the administrator remained liable to account for the whole amount of the inventory as assets, and it was his duty to pay over the assets of the estate to the administrator *de bonis non*, whose duty it was to collect them," yet the court refused to order this to be done, until it should appear, after the amount due the creditor was ascertained, how much money was needed to settle the estate. The opinion closes in these words: " When the amount required is ascertained, and the final accounts are ready to be settled, if it appears that there is estate to be distributed, the account can probably be stated in such a form as will not require the actual payment by the first to the second administrator of money which equitably belongs to the former, which the latter can be required to return." See also *Roy* v. *Gibbon*, 4 Hare, 65, 67.

In the opinion of a majority of the court, the defendant has

the right to file and settle the accounts of his intestate as administrator *de bonis non* of the two Larkin estates in the Probate Court, before he can be called upon to deliver all the assets in his hands belonging to their estates. Whether he should receive compensation therefor, if his intestate has been guilty of maladministration, as the plaintiff contends, is a matter for the Probate Court to pass on in the first instance.          *Decree affirmed.*

KNOWLTON, J. In this case I do not agree with the majority of the court.

The bill is brought, under the Pub. Sts. c. 151, § 2, cl. 4, to obtain property secreted or withheld from the owner, so that it cannot be replevied. The property consists of certain bonds, a savings-bank book, and stocks in railroad corporations, standing in the name of Israel J. Larkin, deceased. The question involved is whether the plaintiff has the legal title and the right of possession. No defence can avail in this suit which could not be made with equal effect if the property were specific goods replevied by the plaintiff.

The plaintiff is administrator *de bonis non* with the will annexed of the estate of Israel J. Larkin, and also administrator *de bonis non* of the estate of Sarah K. Larkin, who was sole executrix of the will of Israel J. Larkin. At the hearing before the single justice the defendant did not insist on the objection that the plaintiff's appointment as administrator *de bonis non* of the estate of Israel J. Larkin was not made until after the bringing of the suit, and that the bill had not been amended. The defendant has not appealed from the decree permitting the plaintiff to recover the greater part of the property as the representative of Israel J. Larkin. We should therefore treat the case as the parties have treated it in their argument; that is, as if the plaintiff's last appointment had been made before the commencement of the suit, and as if the allegations of the bill were sufficient.

The defendant is the administrator of the estate of George O. Frothingham, who was administrator *de bonis non* with the will annexed of the estate of Israel J. Larkin, and the question is presented whether the administrator of the estate of Frothingham can retain this property, or any part of it, as security for a

balance which may be found due him on settling the account of Frothingham's administration in the Probate Court.

The cases relied on in defence establish two familiar propositions: first, that it is the duty of an administrator of a deceased administrator, who dies before completing his administration, to settle his account in the Probate Court; secondly, that an administrator while he continues in office may appropriate the assets of the estate to reimburse himself for advances made for the benefit of the estate. But, except possibly a dictum of Mr. Justice Hoar which I shall consider hereafter, there is nothing in any of them to indicate that an administrator of a deceased administrator has a better right than a stranger to interfere with the goods and chattels of the first intestate which remain in specie unadministered, or, in the absence of loss from neglect of the first administrator, that he should be charged with such property in the account. It seems to me that the opinion of the majority of the court rests on a misconception of cases which hold that an account should be rendered by the administrator of the deceased administrator, and upon an assumption that this account is to include property which has not been administered. There is nothing to that effect in any of the cases which have come to my attention.

The fact that an administrator may apply the specific goods of an estate to his own use, so far as necessary to reimburse him for payments properly made for the benefit of the estate, does not indicate that, if he dies without doing so, his administrator succeeds to his right of control and appropriation. So far as I understand it, the argument in behalf of the defendant rests entirely on the two propositions above stated, which seem to me outside of the question with which we have to deal.

What are some of the considerations in favor of the plaintiff? "An administrator *de bonis non* is entitled to all the goods and personal estate, such as terms for years, household goods, &c., which remain in specie, and were not administered by the first executor or administrator. Also it is holden that if an executor receives money in right of his testator, and lays it up by itself, and dies intestate, this money shall go to the administrator *de bonis non*, being as easily distinguished to be part of the testator's effects as goods in specie." Wms. Ex. (6th Am. ed.) 915,

916. See also note. To the same effect is Bac. Abr. Executors & Administrators, B. 2, subd. 1, 2.

In *Moseley* v. *Rendell*, L. R. 6 Q. B. 338, in reference to the same subject, Blackburn, J. says: " The estate of the intestate was represented by his widow, the mother of the present plaintiff, during her life, and . . . until the appointment of an administratrix *de bonis non*, when the remaining estate vested in her, and not in the representative of the mother." The same doctrine runs through the cases in Massachusetts. In *Weeks* v. *Gibbs*, 9 Mass. 74, in which it was held that unadministered personal property of an estate in the hands of an administrator may be attached at the suit of a creditor of the estate, it is said that, " if the goods of a testator remain in specie, they shall go to his administrator *de bonis non*." Chief Justice Parker says of the estate of a deceased person: " The property may be considered in abeyance until administration is granted, and is then vested in the administrator, by relation, from the time of the death." *Jewett* v. *Smith*, 12 Mass. 309. *Lawrence* v. *Wright*, 23 Pick. 128. The same principle is applied to property unadministered at the time of the death of an administrator. The rule is well established, that in such a case property which has been administered is the subject of an account to be rendered by the representative of the deceased administrator, and the unappropriated property which remains in specie passes directly to the administrator *de bonis non*, and does not enter into the account of the first administrator.

In *Potts* v. *Smith*, 3 Rawle, 361, the subject is discussed elaborately and at great length, with the citation of many authorities, both English and American. It is there shown that in the ecclesiastical courts in England, upon the death of an administrator, the property administered was accounted for by his representative, and disposed of by the court among those entitled to it, without passing to the administrator *de bonis non*, while the property which remained in specie, unadministered, went to the administrator *de bonis non*, who took his title as representative of his intestate, as if there had been no previous administration. See also, to the same effect, *Byrd* v. *Holloway*, 6 Sm. & Marsh. 323 ; *Carrick* v. *Carrick*, 8 C. E. Green, 364 ; *Beall* v. *New Mexico*, 16 Wall. 535, 541.

To enable an administrator *de bonis non* to succeed to administered assets, undistributed, found in the hands of the representative of a deceased administrator, the statute of 1834 was passed in Pennsylvania, which gives an administrator *de bonis non* this right, and provides that a suit brought to recover such assets shall be stayed until the account of the doings of the deceased administrator is settled in court. The assets sought to be recovered in *Slaymaker* v. *Farmers' National Bank*, 103 Penn. St. 616, were the proceeds of administration, which were properly a subject of account, and the action was under this statute. It is plainly implied in the opinion, that an administrator *de bonis non* was entitled to unadministered property remaining in specie before the passage of the statute, and that the construction given to the statute in *Bowman's appeal*, 62 Penn. St. 166, in which Sharswood, J. filed a dissenting opinion, was doubtful. These authorities support the contention of the plaintiff in this case.

The real question between an administrator *de bonis non* and the representative of a deceased administrator, when there is a dispute in regard to the title to property, is whether the property has been administered, or whether it remains unappropriated, either in specie or otherwise, so as to be distinguishable as belonging to the estate. There may be evidence to warrant a finding that the property has been administered and appropriated by the administrator while it remains in specie in his hands, but in the absence of such evidence his representative after his death has no claim upon it any more than any other stranger. This is the doctrine of *Weeks* v. *Gibbs*, 9 Mass. 74. The same principle is asserted in *In re Compton*, 30 Ch. D. 15, which is a strong authority against the position of the defendant here. It is there held that a deceased executor's right of retainer may be exercised by his representative against the moneys which had been paid into court, or were in the hands of the executor as administered assets in his lifetime, but not against other property of the estate which remained unadministered at his death.

In the opinion of the majority much reliance is placed on a dictum of Mr. Justice Hoar in *Munroe* v. *Holmes*, 13 Allen, 109. Perhaps his language is broad enough to include unadministered

property remaining in specie at the time of the death of the administrator. But there are strong reasons for believing that he had in mind only administered assets which would ultimately pass to the administrator *de bonis non,* but which should be made the subject of an account. This seems not only probable, but almost certain, from the following language of the same learned judge in *Fay* v. *Muzzey,* 13 Gray, 53, 57, in reference to chattels belonging to an estate after the removal of an administratrix and the appointment of an administrator *de bonis non*: "The fact that the chattels were in existence, and had not been sold by the administratrix, would make it proper for him to include them in his inventory. They belong to the estate, and remain to be administered, and the administrator *de bonis non* is entitled to receive them, or to maintain a suit for their value against the administratrix." In this case the account of the administratrix had not been settled in the Probate Court, but there was no suggestion that she had a lien for a balance that might be found due her. Upon the general subject, see also *Stevens* v. *Goodell,* 3 Met. 34; *Brown* v. *Pendergast,* 7 Allen, 427; *Choate* v. *Arrington,* 116 Mass. 552; *McKim* v. *Bartlett,* 129 Mass. 226; *Bell* v. *Speight,* 11 Humph. 451; *American Board of Commissioners for Foreign Missions, appellant,* 27 Conn. 344, 351; *Sheets* v. *Pabody,* 6 Blackf. 120; *Harney* v. *Dutcher,* 15 Mo. 89; *Bain* v. *Pine,* 1 Hill, (N. Y.) 615; *Evans* v. *Oakley,* 2 Texas, 182; *Carrick* v. *Carrick,* 8 C. E. Green, 364.

The case of *Browne* v. *Doolittle,* 151 Mass. 595, was not a suit in equity, but a proceeding in the Probate Court to settle an account, in which it was held that an administrator, who had innocently but improvidently paid the assets to the next of kin in ignorance of a creditor's claim which was afterwards presented, need not pay into the hands of an administrator *de bonis non* who had been appointed more than was needed to satisfy the claim and expenses. It does not seem to touch the question now before us.

If the contention of the plaintiff were sustained, the rights of all parties would be easily ascertained and fully protected. The administrator *de bonis non* would take the unadministered property and administer it. The representative of the deceased administrator would settle his account in the Probate Court, and,

if he was found to have a balance in his hands, would be obliged
to pay it over to the administrator *de bonis non.* If the balance
was in his favor he would have a claim for it against the admin-
istrator *de bonis non,* and if there were assets he could enforce
payment of it by a suit on the probate bond. *Munroe* v. *Holmes,*
13 Allen, 109. The administrator *de bonis non* would be bound
to dispose of the estate according to law, and if the original
administrator had used his own money to pay expenses of admin-
istration, or other claims entitled to priority, his representative
would have priority in reimbursement. All controversies would
be easily settled in the Probate Court, which has exclusive juris-
diction of such matters under the statute, and everybody would
be protected in his rights.

The only ground on which the defendant's position can be
maintained is, that after the death of an administrator a lien
exists on the unadministered property in favor of his representa-
tive for any balance that may be found due on settling his
account in the Probate Court. On a very extended examination
of the authorities I have been unable to find a case that even
hints at the existence of such a lien. If a lien exists at all, it
cannot be upon only a part of the estate, but must be on the
whole of it. It cannot depend on possession, because after the
death of the administrator and until the appointment of his
successor no one has a right of possession, but the right of prop-
erty and possession remains in abeyance. On the defendant's
theory of the law, perhaps, if the administrator *de bonis non* were
appointed before the representative of the deceased administrator
and had taken possession of the property, the latter might take it
out of his hands by virtue of the lien. But this would be unpre-
cedented in the settlement of an estate. Under such a lien the
administrator of the deceased administrator might hold the unad-
ministered property for an indefinite time ; for clearly he could
not sell it, and the administrator *de bonis non* would have noth-
ing from the estate with which to pay the claim upon it, and he
would not be required or expected to advance his own money for
such a purpose. Under such a theory of the law, if each of the
parties simply did his legal duty, the estate might remain forever
unadministered. Moreover, the representative of the deceased
administrator would hold the property without giving security

for it; for it would not be a part of the estate of his intestate covered by his official bond.

If a lien exists on the whole estate under the law, there is no power in a court of equity to discharge the lien from any part of it without payment of the debt; and, even if persons interested were willing to advance their own money to discharge it for the sake of enabling the administrator *de bonis non* to settle the estate, they might be obliged either to pay an exorbitant demand or to leave the whole estate, consisting perhaps of a great variety of property, unsettled and on expense, while litigation in regard to the account was carried through the courts.

Under the decree in the present case I do not see how the defendant can avail himself of the savings-bank book or the railroad stock; for he has not the legal title, and cannot collect the money from the bank or transfer the stock. If it be said that this court sitting in equity will undertake to make his lien available, and authorize a sale, the answer is that our statutes have confided the settlement of the estates of deceased persons to the Probate Court, and this court will transcend its legitimate powers and act without precedent if, as a court of equity, it attempts to supervise the administration of estates, and to transfer the administration of unadministered property, either wholly or in part, from an administrator *de bonis non* to the representative of a deceased administrator, or if it tries to enforce a lien without authority from any statute.

I am of opinion that the plaintiff is entitled to the savings-bank book and the railroad stock, as well as the other property.

I am authorized to say that the Chief Justice and Mr. Justice Barker concur in this opinion.

*H. W. Bragg*, for the plaintiff.

*A. H. Russell*, for the defendant.