HARNEY, ADM'R. OF DUTY, APPELLANT VS. DUTCHER & DUTCHER, RESP.

1. A person with whom, or in whose name, a contract is made, for the benefit of another, is a trustee of an express trust; and, by the act regulating practice in courts of justice, may sue in his own name.

2. When the cause of action is such, that the original administrator might have sued in his representative character, the right of action devolves upon the administrator de bonis non of the intestate, and not upon the representative of the original administrator.

3. When the property in any of the effects of the deceased, has been changed by the original administrator, and has vested in him, in his individual capacity, such effects will go to his own representatives, and not to the administrator de bonis non of his intestate.

APPEAL from St. Louis Court of Common Pleas.

### STATEMENT OF THE CASE.

This was an action brought by plaintiff as administrator de bonis non of Duty's estate, on a written instrument of defendant's executed to John F. Darby, who was the preceding administrator of said estate, for the hire and conditional return of a slave, belonging to said estate.    Plaintiff became administrator on the 22 day of June, 1850, Darby having previously resigned; and the said obligation or instrument did not mature until the 14th day of July following:

Harney, adm'r. of Duty vs. Dutcher & Dutcher.

The said instrument of defendants, which was made a part of plaintiff's petition, is in words and figures as follows: "$84, St. Louis, 14th July, 1849. We T. B. Dutcher as principal, and C. O. Dutcher as security, promise to pay John F. Darby administrator of the estate of Milton Duty, deceased, the sum of eighty four dollars, twelve months after date, for value received, negotiable and payable without defalcation or discount, it being for the hire of a negro man named Nat, belonging to said estate. We are to feed and clothe said slave and afford and furnish him medical attendance during the whole of said term; not remove him from the county of St. Louis during said period and to return said slave, if alive to said administrator, in the city of St. Louis on the fourteenth day of July, 1850. Signed

T. B. DUTCHER,<br>
C. O. DUTCHER."

In his petition the plaintiff states, that in and by said instrument, the defendants acknowledged that said sum of $84 was for the hire of a negro man named Nat, belonging to said estate, and which they promised to pay twelve months after date. That defendants further promised, among other things, that they would not remove said Nat from the county of St. Louis, during the period for which he was hired, and that they promised that they would return said slave, Nat, if alive, to said Duty's administrator, &c., in said city on the 14th July, 1850. Plaintiff alleges that said Nat is now alive; that during the period for which Nat was hired, defendants did remove, or permit him to be removed from said county; that said defendants did not return said slave to Darby nor to plaintiff, who is now the successor of said Darby in the administration of said estate.

Plaintiff alleges, that in consequence of the failure to return said slave to said Darby or to plaintiff, he has lost the value of said slave, and that said slave, on the 14th July, 1850, and at the time of commencing this action, was and is worth the sum of $700, in the county, &c., for which sum he asks judgment, &c.

A certified copy of said letters of administration, granted to plaintiff on the 22nd day of June, 1850, was filed and made a part of his petition. And plaintiff says, that by means of said letters, he is the successor of said Darby, in the administration of said estate, and that therefore he hath a right to bring this suit.

To this petition and accompanying exhibits, defendants filed a general demurrer, in the words and figures, following, viz:

The defendants demur to said petition, and state, that it does not appear thereby that the plaintiff has legal capacity to have or maintain the said action against these defendants, upon the contract therein set forth, and which was made with John F. Darby, and asks judgment accordingly.''

Demurrer was sustained by the court below, and to reverse the judgment of said court this cause is brought by appeal to the supreme court.

HARNEY, for appellant.

This case presents two questions which it is desired the supreme court would decide, viz:

1. Has the plaintiff, under the facts and circumstances of this case, a legal capacity to sue?
2. If he has a legal capacity to sue, are the defendants laible to him for a breach of their promise to return said slave, if alive, to said administrator?

That the plaintiff has a legal capacity to sue the defendants, I submit the following:

1. By the first section of 3d article of new code of practice, "every civil action must be prosecuted in the name of the real party in interest." Now as the obligation of defendants is clearly devisible into two parts, the payment of the hire, and the return of the slave, if alive, I suppose it will hardly be contended, that this latter branch is governed by rules which are applicable to personal contracts of the administrator, and that therefore the cases of Lacompte vs. Sargant, 7 Mo. 351; Thomas & Thomas vs. Relfe, 9 Mo. R 377, and

Harney, adm'r. of Duty vs. Dutcher & Dutcher.

*Woodward & Thornton's adm'r vs. McGaugh & Brown, 8 Mo. R. 161, have no application* to the case at bar, except in deducing for the plaintiff in this case.

Again, an extended indulgence is granted to plaintiff, administrator, by second section ot the same article, by providing that "an administrator, &c., may sue in his own name, without joining with him the person for whose benefit the suit is prosecuted.

2, On its face, the obligation purports to be for the hiring and the return to the administrator, of a slave, the property of plaintiff's intestate. The law will presume that the hiring was in pursuance of the order the probate court. But the payment of the hire and the return of the slave were not to be paid nor returned until after Darby had resigned, and the plaintiff had been appointed successor.

The 44th section of 1 article, under the head of administration, code of 1845, page 69 says: "If any administrator, &c., shall resign, &c., he shall account for, pay and deliver to his suc cessor, &c., all money, real and personal property of every kind; all rights, credits, deeds and papers of every kind of the deceased." And by the next section, "the administrator *de bonis non* may proceed at law against any person possessed of any part of the estate. In this case, by handing over the evidences of hiring out the slaves of said estate, Nat included, did Darby discharge his duty? After his resignation and discharge by the probate court, what right had he to the person or further contract of the slave, Nat?

By declaring that he shall pay to his successor all rights, credits, deeds and papers of every kind, does the statute intend that he should have made a written assignment of all such deeds, papers, &c., in order to authorize his successor to sue for property of the estate which had been bailed by him, and the time for which the bailment had been made, had not expired?

3. The slave Nat, was a specfic property, belonging to the estate of plaintiffs intestate, and which could be identified as a part of such estate; and therefore, the plaintiff is entitled to the possession of him, or his value. Gamble vs. Hamilton, 7 Mo. R. 469.

4. A promisssory note given to an administrator, will go to the adm. de bonis non, and not to the representatives of the antecedent adm. Partridge and wife, adm. &c. vs. Court, 2 Excheq., Rep. 267; 5 Price 412.

5. An adm. de bonis non has the same interest in such of the effects as remain unadminis tered, as was vested in the antecedent admr. Toller on exrs., 243, 364.

6. An executor is a assignee in law of all the goods and chattels of his testator. Toller 167.

7. "An executor of an executor," says Williams on executors, p 781, "in however remote a series has the sames interest in the effects of the first testator as the first immediate executor.

"With respect, inded, to choses in action, it should seem to have been established at common law, that an executor of an estate could not bring actions in respect of the original testator. But by statute 25 Edwd. 3, it is enacted that executors of executors shall have ac. tions of debts, accounts of goods carried away of the first testator."

There is a privity of estate in law between an admr. and the adms. de bonis non, which en titles the plaintiff in this action to sue the defendants. In support of this position, I refer to the case of Hirst, admr. de bonis non of Hirst vs. Smith, 7 Dumf. and East 182. This authority is in the text of 1 Chit. Plead. 14; and also it is in the text of 1 Wm. on executors 782, and notes. See also, Dale vs. Roosevelt, 8 Cow, 337. See also Sullivan admr &c. vs. Hol ker, 15 Mass. 374 (Strong.) I conclude therefore, that the plaintiff, under the facts and circumstances of this case, has a legal capacity to sue.

II. Are the defendants liable to paintiffs for the breach of their promise to return said slaves, if alive, to said administrator?

1. If the demurrer in the case shall be overruled, and the facts admitted, that the defendant did remove, or did suffer the slave to be removed from the county of St. Louis, in the language of plaintiff's petition, contrary to their written stipulation, and that thereby the estate has lost his value, then there can be no doubt but that they would be liable to plaintiff, provided, the court decide that he can sue at all: Baggan vs. Walter, 12 Smede's and Marsh. 666.

Harney, adm'r. of Duty vs. Dutcher & Dutcher.

2. But after assuming that the plaintiff has legal capacity to sue defendants, and that they, defendants, used ordinary diligence in efforts to re-capture Nat, after he had run away; still I maintain that defendants are liable for his value to plaintiffs, in consequence of the breach of defendant's promise to return him, if alive, to the administrator, &c.

The case of Ellet vs. Robb, 6 Mo 323, decided that in case the slave hired run away, the hirer was bound for his hire; but it also decided, that in such a case the hirer was not bound for the value of the slave if he run away without the hirer's fault—that he used due diligence to prevent an escape;and to retake him. Now, without intending to deny the law of that case, I insist 'that the cause, in the obligation in this case, containing a promise to return the slave, if alive, changes or varies the contract from an ordinary promise to return. The contracting parties in that obligation, the defendants and Darby, certainly intended some definite meaning to the words "if alive." It will not be denied, that it was lawful for defendants to make a binding promise to return the slave, or pay his value, in all possible cases, death included. If, then, it was intended by this contract, that the defendants should return the slave under all circumstances, provided, only, that he was alive when the promise was to be fulfilled, are not the defendants liable to return him or pay his value?

III. That there are prudential and justifiable considerations for making such a contract, will hardly be denied, viz:

1. While in hiring that peculiar species of property, possessing free will and self locomotion, the law will not be over rigid in holding a *bailee* liable for its loss by running away, provided due diligence has been exercised. On the other hand, this law will uphold and justify the prudence of the owner in exacting from the hirer, a security superadded to that which it affords him in ordinary cases of hiring.

2. The undue excitement and fanatical opinions of a portion of the community where the contract was made, and in the adjoining State, on the subject of African slavery.

3 The great facility for escape of slaves from this community to the adjoining non-slave State, and the very great difficulty of reaching them.

4. The frequency of said escapes, and the general total loss of the slaves.

In conclusion, I insist that the current of authorities recognize and establish this distinction, viz:

In all cases where the antecedent administrator has made any transaction, connected with the estate, his own personal contract, either by selling the interest of the estate, to any personal property, or otherwise, then the administrator de bonis non cannot sue; but, on the other hand, where the right of property remains in the estate, or where the subject of controversy, is unadministered effects of the estate, then, in all such cases the administrator de bonis non has a right to sue; and the case at bar being of the latter class, I respectfully submit, that it ought to be reversed and remanded.

## Kasson, for respondents.

1. The simple question presented by the record is, whether an administrator de bonis non can sue, *virtute officie*, on the promissory note and writing set forth in the petition, made with the preceding administrator and payable to him.

We maintain the negative. It is a personal agreement with the precedent administrator, and the addition of the words "administrator of the estate of Milton Duty, deceased," are only *descriptio personæ*.

This court has never entertained a doubt, that the administrator is, in the eye of the law, the owner of the personalty of his intestate. Thus they have permitted the promissor of a note given to A. B., administrator, &c., to set off their private demands against A. B.; and they state, "no principle of law is more generally acknowledged:" Lecompte vs. Sargant, 7 Mo, 352.

Harney, adm'r of Duty vs. Dutcher & Dutcher.

This court reaffirmed that principle again, and said, that such notes ' are the individual property of him to whom they were payable," and allowed the payee to recover on such a note after his letters were revoked: Thomas vs. Relfe, 9 Mo., 377—a case directly in point: See, also, Grant vs. Chamberlin, 4 Mass. Rep., 613.

2. So, also, the letters of administration, issued to the administrator *de bonis non*, designate him, *only* administrator of all and singular, the goods and chattels, rights and credits, *which are of the said Milton Duty, at the time of his death, remaining* unadministered."

But this chose in action, sued on, was the property of Darby, and he must account for it to the satisfaction of the probate court. It never became the official property of this plaintiff, and was never the property of the deceased; and the consideration of it accrued entirely subsequent to the death of the testator.

N. B. In support of our position, it deserves notice, that the written promise is to Darby, with a *descriptio personæ*; not to Darby with the *descriptio personæ* and the words "and to his successors in office." This construction would make a new contract.

3. In all, or nearly all the English cases, cited by the appellant, the original consideration moved from the intestate, or testator. Where the writing was given to the administrator, the debt originally was assets of the deceased, and did not *first* accrue to the administrator, as in this case.

The principle settled in Thomas vs. Relfe, is supported fully by several English cases: Se Hosier vs. Ld. Arundell, 3 Bos. & P , 7; Barker vs. Talcote, 1 Vern, 473; Betts vs. Mitchell, 10 Mod. 316; Goldthait vs. Petire, 5 Dum. & E. 234.

In Ord vs. Fenwick, 3 East 104, Lord Ellenborough interrupted counsel to speak of a case quoted in this manner: "There the security itself was created after the death of the testator, and therefore the executor must have sued upon it in his own right whatever the original consideration might have been:" Bates vs. Mitchell, above cited.

In the case at Bar, the administrator cannot sue as the administrator of the estate, for the contract sued on had no existence till after letters of administration issued to the first administrator. · The first administrator has control of that security, as his own, and the defendants are entitled to their right of set off, as between him and others; and any settlement they may have made with their party, with whom alone they made their contract. He could have made the contract without any reference to his representative capacity. This, as before stated, is mere *descriptio personæ*.

Scott, J., delivered the opinion of the court.

As to the point made under the new code of procedure, that the action must be prosecuted in the name of the real party in interest, and that consequently the suit may be brought in the name of the administrator *de bonis non*, he being now the real party, it may be observed, that the statute allows the trustee of an express trust to sue in his own name. A person with whom, or in whose name a contract is made for the benefit of another, is a trustee of an express trust. The promise, then, being made to Darby, the former administrator, he is either entitled to the benefit of it, in his own right, or he is trustee for others. If he is trustee, the suit may be brought in his name, for those who are entitled to the money. If the contract was made to him, in his own right, he is also the proper person to sue.

The case of Hirst vs. Smith, 7 D. & E., 182, maintains the doctrine

that when the cause of action is such, that the first administrator may sue in his representative character, the right of action devolves upon the administrator *de bonis non* of the intestate. Thus understood, it is sustained by the case of Catherwood vs. Chaubaue, 1 Barn. & Cres. 150. But all the authorities show, that Darby could not have sued on the contract, now in controversy, in his representative character. None will maintain, that in an action by Darby, on the agreement under consideration, a propert of his letters testamentary would have been necessary. This would seem to be the test, whether a suit is in his own right or in his representative character. When the property in any of the effects of the deceased, has been changed by the original executor or administrator, and has vested in him, in his individual capacity, such effects will go to his own administrator or executor, and not to the administrator *de bonis non*. In Drue vs. Baylie, 2 Frem., an administrator made an underlease of the intestate's term of years, reserving rent to himself, with a covenant to pay him rent, and died; it was holden that his executor, and not the administrator *de bonis non*, should have the rent. The same principle, as to the person in whose name the suit should be brought on a contract somewhat similar, was maintained in the case of Skippington vs. Budd, 3 Young & Call, 1, and affirmed in the House of Lords. So, where one died intestate, and his son took out administration to him, and received part of a debt, being rent in arrear to the intestate, and accepted a promissory note for the residue, and then died intestate; it was held that this acceptance of the note, was such an alteration as vested in the son, and therefore, on his death, it should go to his administrator, and not to the administrator *de bonis non*. In the case of Boyd vs. Sloan, 2 Barley S. C., an executor, acting under a will which was afterwards set aside, based the lands of his supposed testator for a year, and the tenant enjoyed the demisee premises without interruption. It was held, that neither the administrator, subsequently appointed, nor the heir of the intestate could maintain an action, but that the suit should be brought in the name of the executor, he having made the contract. That although the executor may be thus styled, in the body of the note, and it made payable to him as executor, still, he and his personal representatives must alone sue upon it. That the term executor or administrator, is a mere *descriptio personæ*.

The other Judges concurring, the judgment is affirmed.