## JOHN W. VANDEVENTER, Appellant, v. FLORIDA SAVINGS BANK, Respondent.

St. Louis Court of Appeals, December 5, 1911.

1. **APPELLATE PRACTICE: Conclusiveness of Findings of Fact.** Questions of fact are concluded by the finding of the trial court thereon.

2. **MORTGAGES AND DEEDS OF TRUST: Assignment of Note: Effect.** A deed of trust on land given to secure a promissory note, passes to the assignee as an incident to the assignment of the note.

3. **EXECUTORS AND ADMINISTRATORS: Ratification of Act of Joint Administrator.** Though one of two administrators did not joint as co-administrator in assigning, for value, a note which had been executed to the administrators, as such, the signing of his name to the assignment by the other administrator was ratified by his using the proceeds of the assignment in the final settlement of the estate, with knowledge of the assignment.

4. ————: **Assignment of Note: Powers of Administrator.** Under section 216, Revised Statutes 1909, an administrator has no power to assign a note or other evidence of indebtedness belonging to the estate, except in discharge of claims of creditors, legatees or distributees.

5. ————: **Powers of Administrator De Bonis Non.** Evidences of indebtedness to the estate, which were owing to the decedent in his life time and which came into the possession of his administrator, may be sued upon by the administrator *de bonis non*, if not collected theretofore, for the reason he succeeds to the title of the estate; but he has no such power with respect to those evidences of indebtedness which came into the hands of the original administrator in lieu or in payment of obligations which theretofore existed in favor of the estate.

6. ————: Powers of Administrator: Collection of Assets: Effect of Taking Note in Name of Administrator.  An administrator has power to receive payment of an obligation owing the estate either in money or by a note secured by a deed of trust, but if he takes a note payable to himself, or payable to himself as administrator of the estate, in settlement of such an obligation, instead of to the estate, the legal title to such note will vest in him; the employment of the words "administrator of estate" being treated as *descriptio personae*.  The taking of such a note, however, amounts to a conversion, as against the estate, and suit on the administrator's bond will lie if loss ensues to the estate therefrom.

7. ————: Collection of Assets: Taking Note Payable to Administrator: Power of Administrator to Assign.· Where an administrator takes a note payable to himself as administrator in payment of an obligation owing the estate, he has power to transfer such note by assignment to persons other than those enumerated in section 216, Revised Statutes 1909, since that statute merely inhibits the assignment of assets of the estate to others than those therein enumerated, and by taking the note payable· to himself as administrator, instead of to the estate, the legal title thereto vested in him, so as to empower · him to assign it to another.

Appeal from Monroe Circuit Court.—*Hon. David H. Eby*, Judge.

AFFIRMED.

*Ragland & McAllister* for appellant.

(1) The power of an administrator or executor to sell or dispose of the debts and evidences of debt of the estate of his intestate is limited and regulated by statute.  Any such sale or disposition is void except to creditors, legatees and distributees in discharge of an amount of their claims equal to the amount of such debt or evidence of debt.  Sec. 210, R. S. 1899; Marshall v. Myers, 96 Mo. App. 643; Cowgill v. Linville, 20 Mo. App. 138; Stagg v. Linnenfelser, 59 Mo. 336; Chandler v. Stevenson, 68 Mo. 450; State to use of Wolf v. Berning, 74 Mo. 96; Weil v. Jones, 70 Mo. 560.  (2) It is true that the note in contro-

versy was taken by the administrators themeselves in settlement of a judgment due their intestate. This would not change the character of the note. It would still be "a note of the estate" within the meaning of section 210, supra, unless this court gives its assent to the technical common law doctrine that an asset once converted ceases to be an asset. But if that doctrine were recognized and it was held that the note was not a "note of the estate" then the rule applicable to ordinary commercial paper would apply and title could not be passed except upon the endorsement of both payees. And one of two joint payees has no implied authority to endorse the name of his co-payee. Smith v. Whiting, 9 Mass. 334; Clark v. Grambling, 45 Ark. 525; Johnson v. Margum, 65 N. C. 146.

*James P. Boyd* for respondent.

(1) The note in controversy having been executed subsequent to the date of the death of J. H. Hobbs and subsequent to the appointment of Vanschoaick and Kendall as administrators vested in them in their individual capacity and upon their death would have vested in their executors and not in the administrator *de bonis non* of the estate of J. H. Hobbs. Harney v. Dutcher, 15 Mo. 61; Cook's Executor v. Holmes, 29 Mo. 61; Block Adm'rs v. Dorman, 51 Mo. 32; Rittenhouse v. Ammerman, 64 Mo. 199; Brooks v. Mastin, 69 Mo. 63. (2) Vanschoaick received the full benefit of this transaction and the money was checked out by him and Kendall as shown by the undisputed evidence of appellant's own witness Kendall and he could not without first refunding the bank the money obtained from the sale of the note disavow the right of Kendall to sign his name and sell and deliver this note to respondent bank and this he must have done within a reasonable time. Barrett v. Davis,

104 Mo. 561; Cracker & Candy Co. v. Ins. Co., 41 Mo. App. 543; Mayer v. Old, 57 Mo. App. 639.

NORTONI, J.—This suit was instituted and tried on the theory that it involved title to real estate. The finding and decree were for defendant and plaintiff prosecuted an appeal to the Supreme Court. Upon consideration, the Supreme Court determined that, though title to real estate may be affected by the judgment given on the pleadings, it is not in issue, and, therefore, transferred the case here for final determination, as will appear by reference to Vandeventer v. Florida Savings Bank, 232 Mo. 618, 135 S. W. 23, where the pleadings are set out in full. The sole question of law invoking the judgment of the court relates to the power of the administrators to convey title to defendant bank by assignment of a promissory note made to them in their representative capacity during the course of administration, such assignment being in due form and for a valuable consideration. Other questions are of fact only, and they are concluded by the finding of the trial court thereon.

Defendant is and has been for many years an incorporated banking institution doing business in Monroe county, while plaintiff owns eighty acres of land in that county, incumbered by a deed of trust securing a promissory note which was assigned to the bank by the administrators of Hobbs for a valuable consideration. The suit proceeds on the theory, first, that the note had been paid and therefore the lien of the mortgage was released, and, second, that it had never been assigned to the bank for the reason the administrators were not possessed of authority under our statutes to assign notes of the estate to persons other than creditors, legatees or distributees, of which the bank is not one.

It appears that at the time of the death of J. H. Hobbs, to whom Vanschoaick and Kendall afterwards

became administrators, John P. Goss owed him a promissory note then in Hobbs' possession. After the death of Hobbs, W. B. Vanschoaick and J. T. Kendall were duly appointed, qualified and became administrators of his estate. Among other assets of the estate of Hobbs which came into their hands was the promissory note which Hobbs held against John P. Goss. The administrators instituted a suit against Goss on this note and obtained a judgment therefor. Afterwards, and during the course of the administration of the estate of Hobbs, John P. Goss settled and paid this judgment to such administrators by executing a promissory note to them on March 29, 1897, in the amount of $520. This note of $520 so executed by Goss in payment of the judgment was made payable to the administrators in their representative capacity; that is to say, "to the order of W. B. Vanschoaick and J. T. Kendall, administrators of the estate of J. H. Hobbs." Goss made several payments on the note to the administrators until it was finally reduced in amount to $200, which remained unpaid at the time defendant bank purchased it. On the same day that Goss executed this $520 note to the administrators— March 29, 1897—he, together with his wife, made and executed a deed of trust to A. D. Bell, trustee, to secure the payment of the note which is therein described "to the order of W. B. Vanschoaick and J. T. Kendall, administrators of the estate of J. H. Hobbs." This deed of trust, which was promptly recorded, covered and created a lien upon eighty acres of land in Monroe county then owned by Goss and wife, but which plaintiff now owns subject to such lien. Afterwards, in February, 1909, the administrators, desiring to make final settlement of the Hobbs estate, urged Goss to pay the note so they could employ the money in such settlement. As Goss was unable to pay the note at that time, the administrators, on February 11, 1909, sold and assigned the note to defendant, Florida

Savings Bank, for the amount of $200 which remained unpaid thereon. On that day, the administrators indorsed the note to the bank in their representative capacity as follows: "J. T. Kendall, W. B. Vanschoaick, Adms. Est. J. H. Hobbs." It appears the administrator Vanschoaick did not sign the indorsement on the note in person and that his name was affixed by his co-administrator, J. T. Kendall. However, simultaneously with this assignment, defendant bank deposited $200 to the credit of "J. T. Kendall and W. B. Vanschoaick, administrators of the estate of J. H. Hobbs, deceased," and the administrators subsequently checked out this money and employed it in the final settlement of the estate a few days thereafter. It seems the note has never been paid to the bank, but interest has been paid thereon from time to time, and at the institution of this suit, the bank continued to hold the note together with the deed of trust on the land, which, of course, passed to it as an incident to the assignment of the note.

On the 5th day of April, 1905, the sheriff of Monroe county sold the interest of Goss and wife, makers of the note and deed of trust in the eighty acres of land covered by the deed of trust, under execution issued on a judgment against the owners of such land, and plaintiff purchased at the sheriff's sale. The case concedes that the judgment on which the sheriff sold under execution and under which plaintiff purchased was subsequent in point of time to the record of the deed of trust given by Goss and wife on the land, March 29, 1897, and which defendant now holds as security for the note.

It is difficult to determine the true issue presented here, but it seems plaintiff seeks a judgment declaring the bank to be without any interest whatever in the note and consequently none in the deed of trust on his land. Be this as it may, we will consider the arguments put forward in the briefs and dispose of

the controversy accordingly. Plaintiff requested a special finding of facts and separate conclusions of law under the statute, and this the court gave. The court found as a matter of fact that defendant bank purchased the note from the administrators at the time and in the manner above set forth and found, too, that the note has never been paid. Plaintiff concedes that the evidence is abundant to support this finding of fact except with respect to the assignment of W. B. Vanschoaick, one of the administrators. All of the evidence goes to show that Vanschoaick did not personally affix his signature to the assignment of the note and that his name was signed thereto by his co-administrator, J. T. Kendall. The court so found the fact to be, but found as well that the administrator Vanschoaick subsequently ratified and confirmed the act of Kendall, his co-administrator, in signing his name to the indorsement. The point is made that the evidence does not support the finding of the court with respect to the ratification but we do not accede to that view. It is shown by the records of the bank that the $200 which the bank gave as consideration for the assignment of the note was then and there deposited in the bank to the credit of "W. B. Vanschoaick and J. T. Kendall, administrators of the estate of J. H. Hobbs." It appears, too, that the administrators within a few days thereafter withdrew this money from the bank on checks and employed it in the final settlement of the estate which operated, of course, to the benefit of both of them. Since the transaction occurred, the administrator Mr. Vanschoaick has departed this life and he did not speak on the subject personally, but besides those stated, other facts and circumstances in proof suggest that he had knowledge of the transaction and accepted its benefits. There can be no doubt that there is ample evidence in the record to support the finding of the court that Vanschoaick ratified the act of his co-administrator in af-

fixing his name to the assignment of the note, for beyond question he knowingly accepted the benefits of the transaction from the bank and employed the money in discharging his obligation in settling the estate.

But it is said that, though the assignment on the note was executed by Kendall and signed by him for Vanschoaick and this act was thereafter ratified, or, though it was actually signed by both administrators in person, it availed naught toward vesting the title of the note in defendant bank, for the reason our statute impliedly forbids the transfer of such notes by the administrators to others than creditors, legatees or distributees. It is true defendant bank was neither a creditor nor distributee of the estate nor was it a legatee under the will, for there was none. Our statute (Sec. 216, R. S. 1909) provides that executors and administrators may assign the notes and bonds, stocks, accounts and all other evidence of debt of the estate to creditors, legatees and distributees in discharge of the amount of their claim equal to the amount of such bond or note. It has been frequently determined under this statute that an administrator may not assign a note or other evidence of indebtedness belonging to the estate, except in discharge of the claims of creditors, legatees or distributees, to the amount of their claims equal to the amount of such bond or note. It is said the statute implies an inhibition against such transfers to other persons and in this abrogates the rule of the common law on the subject. [See State to use of Wolff v. Berning, 74 Mo. 87; Stagg v. Linnenfelser, 59 Mo. 336; Chandler v. Stevenson, 68 Mo. 450; Weil v. Jones, 70 Mo. 560; Marshall v. Meyers, 96 Mo. App. 643, 70 S. W. 927.] But it is to be observed that the statute contemplates and treats of assets of the estate, for if the words imply an inhibition, it is with respect to the assignment of notes, bonds, stocks, accounts and all other evidences of debt "of the estate." In all of the cases above cited where

the matter has come in judgment, it appears the note or other evidence of debt assigned or attempted to be assigned by the administrator was one payable to the decedent in his lifetime and one which came into the hands of the administrator as an asset of the estate. Throughout the law, there has always been maintained a distinction, which still obtains, with respect to assets of the estate which came into the hands of the administrator through the death of his intestate and the appointment and qualification of the administrator, and those which come into his hands thereafter during the course of administration. Such assets as evidences of indebtedness to the estate which were owing to the decedent in his lifetime and came into the possession of his administrator may be sued upon by the administrator *de bonis non,* if not collected theretofore, for the reason he succeeds to the title of the estate. [See Newhall v. Turney, 14 Ill. 338; Harney, Adm'r v. Dutcher, 15 Mo. 89; Cook's Ex'r v. Holmes, 29 Mo. 61; Barker v. Talcot, 1 Vern. 473; Wilson v. Arrick, 11 MacArthur, 228; Wilson v. Arrick, 112 U. S. 83; U. S. to use of Wilson v. Walker, 109 U. S. 258; 2 Woerner Am. Administration Law (2 Ed.), Sec. 351.] But not so with respect to those evidences of indebtedness which come into the hands of the administrator after his qualification to that office in lieu of or in payment of obligations which theretofore existed in favor of the estate. The theory as to such evidences of indebtedness is, that they become the property of the administrator through taking them payable to himself, and this is true notwithstanding they are payable to him as administrator of the estate. The employment of the words "as administrator of the estate" in this connection are treated by the courts as merely descriptive of the person and as surplusage, for it is said such evidences of indebtedness so given to the administrator in payment of a debt owing to the estate must be regarded as his property, inasmuch

as the asset of the estate has been fully paid and administered through the execution of a new note to the administrator. The principle invoked and reckoned with by the courts in such cases is that which pertains to a conversion. No one can doubt that the administrator possesses complete authority to accept payment of debts owing to the decedent which came to him as assets of the estate—in this case, the note which Goss owed to the intestate Hobbs. Neither is it to be doubted that the administrators were possessed of authority to sue upon the original note of Goss, which came to him as an asset of Hobbs' estate and to recover a judgment thereon in favor of the estate. After having done this, the authority of the administrators is equally as clear with respect to receiving a payment of that judgment from Goss, either in money or by a note and deed of trust, as was done.

Possessing full authority with respect to these matters as they did, the execution of the $520 note and deed of trust to the administrators in payment of that judgment by Goss operated to extinguish the judgment and the indebtedness which it represented as an asset of the estate and converted it into a debt payable to the administrators. In other words, the asset of the estate was thereby fully administered and a new obligation created as the proceeds thereof, which, in the eye of the law, the administrators converted to their own use by taking the note, payable to themselves, instead of to the estate. Such was an unwarranted exercise of dominion by the administrators over the proceeds of the judgment which was inconsistent with the rights of the estate, and, therefore, a conversion. Where such appears to be the fact, the courts universally declare the legal title with respect to the note so made payable to the administrators to reside in them and to pass upon their death to their personal representatives and not to the administrator *de bonis non*. For this, a suit on the administrator's bond will lie

at the instance of the administrator *de bonis non* if loss ensues to the estate. Our Supreme Court, in effect, so ruled the question in a case where the first administrator let out to service a slave owned by the estate and took for such service a written obligation, payable to himself as administrator. In that case, Darby, the first administrator, resigned and afterwards a suit was brought on the obligation taken by him for the service of the slave by the administrator *de bonis non,* but the Supreme Court declared no recovery could be had by the last named administrator, for the reason the property which belonged to the estate had been changed by the original administrator and the right sought to be enforced had vested in him in his individual capacity on the theory of a conversion. It was, therefore, ruled that the first administrator, Darby, or his personal representatives, alone could maintain the suit. [See Harney v. Dutcher, 15 Mo. 89. To the same effect see Cook's Executor v. Holmes, 29 Mo. 61; Block v. Dorman, 51 Mo. 31; Brooks v. Mastin, 69 Mo. 58; Newhall v. Turney, 14 Ill. 338; Barker v. Talcot, 1 Vern. 473; 2 Woerner Am. Law Administration (2 Ed.), sec. 351.] The authorities declare the same result in every case where it appears the first administrator has received payment for the sale of goods, the hire of chattels, the leasing of land or the collection of a debt due the estate, and this is true though such payment be made by executing a note to him as administrator. The principle obtains, too, with respect to the administrator's own debt to the estate when held to be converted into assets in his hands by appointment. In every instance the right of property is declared to vest in the administrator so as to pass to his personal representatives. For an array of authorities on the subject, see 2 Woerner Am. Law Administration, Sec. 351, and cases in the notes. The principle is an ancient one and comes to us from the English courts which frequently expound

it, as will appear by reference to Barker v. Talcot, 1 Vern. 473, where it appears an administrator received part of a debt due the intestate and accepted a promissory note payable to himself as administrator for the residue. On these facts, it was declared that the taking of the note was such an alteration of the property as vested the note in the administrator and on his death it passed to his personal representatives and not to the administrator *de bonis non* of the first intestate; for it is said the acceptance by the administrator of a part of the debt and a promissory note for the balance operated the complete administration of that asset of the estate and vested the note in him through its conversion.

It appearing as it does that the note executed by Goss to the administrators of Hobbs was in payment of a judgment in favor of the Hobbs estate, the judgment asset of the estate must, therefore, be regarded as fully administered and the legal title of the note received in payment to have vested in the administrators as if converted by them so as to empower them to either sue upon it in their own names or assign it to another. In this view, the assignment to defendant bank was a valid one and should be sustained.

It may be that this plaintiff, having purchased the land April 5, 1895, with the deed of trust upon it and of record years before, is not in a position to complain at all as to the validity of the assignment of the note to the bank, but we will not consider this matter further than to say it is immaterial in the view we take of the case. The judgment should be affirmed. It is so ordered. *Reynolds, P. J.,* and *Caulfield, J.,* concur.