*Northern District*

No. 4774

## HOME INDEMNITY CO.
### v.
## BETTY L. LEARNED

(December 8, 1954)

*Brooks, J.* This is an action in contract in which plaintiff seeks to recover premiums on defendant's bond as administratrix of the estate of Leroy C. Thayer. Defendant has pleaded general denial, payment, lack of consideration, agreement that the obligation to pay premiums were to cease on the disposal of the assets under court order. (Espovich, J.)

The only evidence at the trial was the testimony of the Register of Probate and counsel for the defendant. The attorney for the defendant testified that the photostatic was not an exact copy of the original. The amount of the premium was not in the original bond application. The original was left with the agent of the insurance company. The amount of the bond sent in by the plaintiff and a $20.00 payment was made for the bond premium. In 1948, the defendant's attorney paid the agent, the bond

premium of $20.00. No final account ever filed. A
petition was filed that the estate was insolvent and
notice was sent to the agent of the insurance com-
pany; that the assets of the estate had been disposed
of. John J. Costello, Register of Probate for the
County of Essex testified on the estate records,
Docket No. 223196. The bond dated March 4, 1948
was admitted in evidence. No final account or decree
was filed or allowed.

Defendant filed the following requests for rulings:

"1.  The evidence in this case warrants a finding for
the defendant.

2.  The only consideration for premiums due to a surety
company is the assuming or continuing the legal
responsibility of a surety. *American Surety Co. v.
Vinton,* 224 Mass. Page 341.

3.  After the entire proceeds of the estate of Leroy C.
Thayer had been disposed of, in accordance with
the order of the Court, no liability could have been
incurred by the defendant as administratrix or by
the plaintiff as surety for her. *American Surety Co.
v. Vinton,* 224 Mass. Page 341.

4.  Any premiums charged by the plaintiff, after the
proceeds of the estate were disposed of in accordance
with the order of the court, was unearned and was
without consideration.

5.  The order of the court determining the attorneys
fees and expenses terminated the liability of the
defendant to the plaintiff for premiums on surety
company bonds. General Laws, 206 Article 17.

6.  The court will relieve an administratrix from what
it considers to be unconscionable contract. *Allen v.
Moushagin,* 320 Mass. 746.

7.  To hold the defendant liable in this case would be
to make her responsible out of her own personal
funds with no possibility of reimbursement from
the estate.

8. Upon all of the evidence, the lack of consideration furnished by the plaintiff would result in an undue hardship on the defendant if she were required to pay unearned premiums on the bond."

The court made the following findings and rulings:

"The plaintiff, at the request of the defendant, on March 4, 1948, did become surety upon the bond of the defendant, as administratrix of the Estate of Leroy C. Thayer. The plaintiff is a surety company qualified to do business in this state, and this bond was furnished to the defendant by the plaintiff, at the request of an agent of the plaintiff company acting in behalf of the defendant . . .

I find that the bond is a continuing bond, and that at no time was there ever any judicial decree terminating the liability of the defendant or the plaintiff upon the same. At the trial there was testimony that the estate of the defendant's intestate had been by decree declared insolvent."

The findings were filed in the Clerk's Office April 6, 1954, and notice mailed to both parties the same day. The defendant received notice of the findings April 10, 1954, and filed a request for a report with the Clerk's office April 14, 1954. The defendant's draft report was filed April 21, 1954. On the same day, the defendant's attorney mailed to the plaintiff's attorney an envelope containing a notice of the filing of the draft report, which the plaintiff's attorney received after the filing of the draft report; three cents postage was prepaid on the envelope, but when it was tendered to the office of the plaintiff's attorney, the envelope was marked "Due 3c" and a three cents' postage due stamp was affixed to the envelope. The plaintiff's attorney was required to pay and did pay three cents before receiving the envelope. The draft report was not otherwise served upon the plaintiff. No motion for extending the time for filing the draft report was filed. The foregoing facts were not controverted.

The plaintiff filed a motion to dismiss the defen-

dant's request for report and draft report, as follows:

## "MOTION TO DISMISS CLAIM OF REPORT AND DRAFT REPORT

The plaintiff says that the defendant did not deliver a copy of the draft report to the Plaintiff before the close of the next business day after filing of such draft report, and the plaintiff further says that the defendant did not mail postage pre-paid a copy of the draft report to the Plaintiff before the close of the next business day after filing of the original of Defendant's draft report, as required by Rule 28 of the District Courts.

Wherefore the plaintiff moves that the defendant's claim of report and draft report be dismissed."

The plaintiff filed an affidavit in support of the above motion, as follows:

## "AFFIDAVIT IN SUPPORT OF PLAINTIFF'S MOTION TO DISMISS DEFENDANT'S CLAIM OF REPORT AND DRAFT REPORT

Thomas V. Sullivan, of counsel for the plaintiff says that the findings and rulings were filed with the Clerk's office April 6, 1954, and a copy thereof received by the counsel for the plaintiff April 7, 1954; that the request for a report by the defendant was filed with the Clerk's office April 14, 1954, at 9:00 A.M.; that the plaintiff's counsel received a copy of said request for a report on the said fourteenth day of April in an envelope postmarked April 13, 1954; that the draft report was filed April 21, 1954, and the plaintiff's counsel received an envelope on April 22, 1954, postmarked April 21, 1954, with the return address of defendant's counsel, and presumably containing a copy of the draft report. Said envelope was tendered to the office of plaintiff's counsel with a postage-due stamp attached to said envelope, and plaintiff's counsel was required to pay three ($0.03) cents in order to obtain said envelope and contents. To the best of your affiant's knowledge and belief, the draft report was not served upon the plaintiff except as herein stated."

The plaintiff also filed six requests for rulings on the motion, of which two were waived in writing at the time of filing. The remaining four requests are set forth below:

"3. The evidence is sufficient to warrant a finding that the defendant or her attorney mailed a copy of the draft report to the plaintiff's counsel without providing sufficient postage for the same.

4. The evidence is sufficient to warrant a finding that no other copy of such draft report was delivered or mailed to the plaintiff.

5. If the defendant mailed a copy of the draft report to the plaintiff but did not provide sufficient postage for the same, then such mailing is insufficient compliance with Rule 28 of the District Courts.

6. If the defendant mailed a copy of the draft report to the plaintiff, but did not provide sufficient postage for the same, and this was the only service of the draft report upon the plaintiff, then the defendant's draft report must be dismissed.

"I disposed of the above requests as follows:

3. Granted.

4. Granted.

5. In exercise of discretion, request denied. If not allowed any discretion, request granted.

6. In exercise of discretion, request denied. If not allowed any discretion, request granted.

"I ruled further that if I had discretion in acting on the motion to dismiss, it was to be denied; but if I had no discretion, it was to be allowed."

We pass first on the court's denial of plaintiff's motion to dismiss defendant's claim for a report and draft report. Plaintiff filed six requests for rulings, two of which were waived. The other four raise only the question of the effect of the failure by defendant to supply adequate postage on the envelope containing the notice of the filing of the draft report.

The requirement that postage be prepaid is presumably to insure delivery of mail carrying the report. The recipient of the mail always has the right to refuse to pay deficient postage in which case he does not get the mail. If he elects to receive the mail by virtue of supplying the additional postage himself, the important thing has been accomplished—receipt of the mail. He has not been harmed, except to the extent of paying 3c. His payment of postage might reasonably be considered a waiver on his part of the requirement for prepaid postage. Regardless of the language used by the court in disposing of the requests for rulings, we think the result reached, namely denial of the motion to dismiss, was correct.

We come next to the correctness of the court's findings and rulings in the matter of defendant's liability for payment of the bond premiums subsequent to the initial payment in June of 1948. This involves the question—When did defendant's liability on her probate bond cease?

The consideration for premiums due to a surety company is the assuming or continuing of the responsibility of the surety. *American Surety Co. v. Vinton,* 224 Mass. 337, 341.

In the case before us, if plaintiff's liability continued during the period for which it claims premiums, namely during the years 1949 through 1953, then the court's findings and rulings must be sustained.

An administrator remains liable under his bond until he has been discharged by the court. *McKim v. Bartlett, et al,* 129 Mass. 226. Of course, his surety remains liable with him.

The surety is entitled to an annual premium until the estate is finally settled. Newhall Settlement of Estates, par. 44.

No final account had been filed, therefore technically the Thayer estate was not finally settled. At the time this suit was brought, there was testimony that a petition was filed that the estate was insolvent and

that notice was sent to plaintiff that the assets had been disposed of. The judge made a finding that a decree of insolvency had been entered. There was no further evidence as to how or when the assets had been disposed of.

Apart from the element of insolvency, the liability of defendant on his bond continued, no final account having been filed. With regard to the insolvency, were it proved that a decree of insolvency had been filed and the assets distributed under order of the court, the liability of defendant on her bond would probably have been terminated.

The leading case on this subject is *Coleman v. Hall*, 12 Mass. 570, which held that proof of distribution of an insolvent estate under decree of court, was a defense to a judgment previously rendered. Citing this case and several intervening cases, the court in *Campbell v. Employer's Liability Assurance Corp., Ltd.*, 319 Mass. 624, said at pp. 625, 626, "Final adjudication of the insolvency of an estate is a complete defense to the administrator and his surety to any claim of breach of his bond in failing to satisfy a judgment of a general creditor, even though insolvency is not represented or established until after the judgment is rendered."

In the above case, as in the other cases therein cited, distribution had been made under decree of court. "Final adjudication" implies distribution by court decree. A preliminary decree of insolvency is not sufficient to terminate an administrator's liability since, until the assets are out of his hand, there is opportunity for negligence or malfeasance against which the bond is protection.

In *McKim v. Roosa*, 183 Mass. 510, the court said p. 512, "But until commissioners have made a report and a decree has been made on their report that the estate is insolvent and a distribution is ordered, the defense of plene administravit is not made out."

As stated in Newhall-Settlement of Estates, par. 226. "The mere filing by an executor or an ad-

ministrator in the probate court of a representation of insolvency, and the decree of probable insolvency, which the court issues in appointing commissioners, do not of themselves constitute a defense. Actual or legal insolvency, however, as established by a final decree of the probate court ordering a distribution of dividends, is a complete defense." *Chamberlain v. Barrow*, 282 Mass. 295.

There is an obvious analogy between the effect of a decree of distribution in insolvency and a decree allowing a final probate account. In each instance, because the administrator has no further duties, there is normally no further need for a bond. Therefore, until one or the other of these decrees is entered, the bondsman and his surety remain liable and the surety is entitled to premiums from the bondsman against the risk involved.

There is a further difficulty with attempting to inject insolvency into the case. Insolvency is an affirmative defense which must be pleaded and it has not been pleaded.

There being no plea of insolvency here and there being no evidence in this case of a final adjudication in insolvency, and the court having explicitly found that no final account had been allowed, the finding for plaintiff was justified. There was no error in the denial of Requests for Rulings No. 3, 4, 5, 8, these not being based on the evidence. *Report dismissed*.

Sullivan and Smith, for the plaintiff.

Edward H. J. Wilson, for the defendant.